UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ADRIANA CUARTAS | : | |
| | : | Civ. No. 08-3487(DRD) |
| Petitioner, | : | Crim. No. 04-609(DRD) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| Respondent. | : | |
| | : | |

CHRISTOPHER J. CHRISTIE
United States Attorney
By:    Dennis C. Carletta
         Assistant U.S. Attorney
         970 Broad, Suite 700
         Newark, New Jersey 07102
                 Attorneys for United States of America

Ms. Adriana Cuartas
Inmate #26607-050
Federal Correctional Institution
Route 37
Danbury, CT 06811
         Defendant, *Pro* *Se*

**Debevoise, Senior District Judge**

On October 17, 2006, the court sentenced Defendant, Adriana Cuartas, to a term of 120 months imprisonment, 5 years supervised release, and a special assessment in the amount of $100. The Court of Appeals affirmed Defendant's conviction and sentence on July 1, 2008. In July, 2008, Defendant filed two motions (which will be treated as a single motion) pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct her sentence on the ground that she was

deprived of effective assistance of counsel.

## I. Background

On August 10, 2005, a grand jury returned a one-count superseding indictment charging Defendant with conspiracy to distribute and to possess with intent to distribute more than one kilogram of heroin in violation of 21 U.S.C. § 846. Defendant moved to suppress her post-arrest statements as well as consensually monitored and recorded telephone conversations between Defendant and a confidential informant working with law enforcement.

Defendant's moving papers accurately recite that the case involved a controlled substance delivery operation, which began in August, 2004, when a confidential informant located in Bogota, Colombia, advised United States narcotics agents that two kilograms of heroin were to be delivered to the Newark, New Jersey area. The shipment was intercepted and seized by United States law enforcement personnel, who then arranged for a controlled delivery of "sham" heroin to the intended recipients in Newark. Defendant and a co-defendant, Elizabeth Olaya, arrived to meet with the informant and were arrested.

Defendant contends that when agents interviewed her immediately after her arrest she repeatedly denied knowing anything about the drugs until the agents confronted her with pictures of her children. She testified at a subsequent suppression hearing before Judge Hayden:

> The agent stood over me, pointing and placing his finger on the photographs. While he did that, he yelled at me, saying, in substance and in part, "look at your kids. You need to help us. You need to cooperate now. You need to cooperate now if you ever want to see your kids again. If you don't help, then you won't ever see your kids again."
>
> The primary agent told me that Elizabeth Olaya, my friend of 20 years, had told

2

them she was in Newark to buy drugs. He told me that I needed to acknowledge the events that had occurred so I could be with my kids. Finally, I told the agents what they wanted to hear so that I could see my kids again. After that, the agents took me back to the cell. Several hours later, the agents brought me back to the small room I had been in earlier. Elizabeth was there also. . .

Judge Hayden denied the suppression motion, stating:

> I need not make findings about the vulnerability of this particular person. But I do point out that the agents' remark, 'think of your children,' would of course be profoundly affecting to any parent. I don't find standing alone it is improper. And I do find that Ms. Cuartas is a grown up, a woman raising a child, holding down a job with education and that such a person would not be overwhelmed by this remark in its poignancy.

Defendant proceeded to trial at which she testified on her own behalf and denied her guilt. During jury selection a potential juror identified herself as a Colombian and stated that she worked as a retail store manager. The government challenged the juror and when the Court questioned the Assistant United States Attorney why he believed she should be challenged he responded:

> She indicated she was a store manager of a retail store. Her husband was a manager of the retail store. One of the government's primary witnesses has been convicted of shoplifting. The government believes that the witness may have been bias [sic] to that witness on that basis.

After discussion at sidebar defense counsel suggested that the shoplifting would not come out during the questioning of the witness. The government stated that in that event it would have no objection to the juror being seated. However, by that time the juror had left the courtroom.

The jury convicted Defendant. At the sentencing hearing the court found that while Defendant was the principal actor in the exchange she could not be characterized as an organizer, leader, manager or supervisor subject to a two-level increase. Nevertheless, the court also held

3

that Defendant was subject to the statutory minimum and sentenced her to that minimum - 120 months imprisonment.

Defendant appealed her conviction and sentence, raising three grounds: (i) the failure to suppress the allegedly coerced post-arrest statements; (ii) the trial court's sustaining the government's challenges of the potential juror from Colombia; and (iii) the court's failure to sentence Defendant below 120 months. The Court of Appeals appointed counsel to represent Defendant on appeal. Counsel filed an Anders brief. Anders v. California, 386 U.S. 738 (1967).

In his brief counsel asserted that none of Defendant's arguments contained any legitimate legal merit for review. On the issue of alleged post-arrest statements, he contended that Defendant's decision to take the stand effectively mooted the issue, relying in part on Harris v. New York 401 U.S. 222, (1971). (In its Answer the government asserts a different reason for rejecting this ground for appeal, citing Harrison v. United States, 392 U.S. 219 (1968)). With respect to the Batson issue, counsel contended that the issue was raised at trial and satisfactorily inquired into by the district court. As to the sentencing contention, counsel stated that "[g]iven the jury's specific finding that the conspiracy involved more than one kilogram of heroin, the District Court indeed did all that it could under the law in applying Booker and imposing a non-Guidelines sentence at the statutory mandatory minimum of 10 years."

After reviewing defense counsel's Anders brief and the government's reply, the Court of Appeals granted defense counsel's application for discharge and on July 1, 2008, affirmed the Defendant's conviction and sentence.

Defendant's July 11, 2008, motion pursuant to 28 U.S.C. § 2255 advances three ineffective assistance of counsel grounds for relief:

4

> (i) Counsel was ineffective in failing to argue on appeal that petitioner was coerced at the interview by the federal agents and as such her post-arrest statements should have been suppressed.
>
> (ii) Counsel was ineffective in failing to lodge a timely objection to an error that occurred at the Jury Selection in this case.
>
> (iii) Counsel was ineffective in failing to remind the Court that it had the authority to go below the mandatory minimum of ten years in this case.

## II. Discussion

In Strickland v. Washington, 466 U.S. 668, 687 (1984) the Supreme Court set forth a two-part test to establish ineffective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense, specifically, that counsel's errors were so serious as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687; Reese v. Fulcomer, 946 F.2d 247, 256-57 (3d Cir. 1991). A defendant seeking to vacate his sentence must satisfy both prongs of the *Strickland* test. Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999), cert. denied. 527 U.S. 1050 (1999); United States v. Baynes, 622 F.2d 66, 69 (3d Cir. 1980) (movant bears burden of proof to demonstrate ineffective assistance). However, a reviewing court "need not determine whether counsel's performance suffered by the defendant as a result of [any] alleged deficiencies." Strickland, 466 U.S. at 697. Accordingly, if it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, a reviewing court should do so. Id.

Defendant's § 2255 motion is nothing more than an attempt to reargue issues that have already been decided by the Court of Appeals. In his Anders brief defense counsel addressed

5

each of the issues that Defendant raises in the guise of an ineffective assistance of counsel claim: (i) failure to suppress post arrest statements; (ii) a Batson argument for an allegedly improper dismissal of a potential juror; (iii) failure to impose a sentence below the statutory mandatory minimum of ten years. The government's brief also addressed these three issues.

Upon consideration of these submissions the Court of Appeals granted defense counsel's application for discharge, obviously agreeing with him that none of Defendant's arguments contained any legitimate legal merit for review. The Court of Appeals affirmed the conviction and sentence.

A defendant may not re-litigate claims on a § 2255 motion that were previously decided on the merits on direct appeal, absent newly discovered evidence or a significant change in factual or legal circumstances of the case since the prior consideration. United States v. Orejuela, 639 F.2d 1055, 1057 (3d Cir. 1981); United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979); 28 U.S.C. § 2255. There has been no newly discovered evidence or change in the applicable law.

In her moving papers Defendant argues that because the court absolved her of a leadership role she could have qualified for the statutory safety valve provision, U.S.S.G. § 5C1.2. According to her, it was only counsel's inaction that prevented her from receiving that benefit. U.S.S.G. § 5C1.2(a)(5) provides that one of the criteria a defendant must meet is that she must "not later than the time of the sentencing hearing . . . truthfully provid[e] to the Government all information and evidence the defendant has concerning the offense." Defendant advances the preposterous suggestion that ". . . it was counsel's job to remind this Court that since petitioner [otherwise] qualified for the safety valve, all the government needed to do was to

6

debrief her prior to the imposition of sentence, so that this Court could proceed and depart below the mandatory minimum of 120 months. But counsel failed to do so." (Def. Motion at 10). In other words, Defendant is suggesting that trial counsel was defective for not asking the government to permit Defendant to sit down with the prosecution, disavow her trial testimony supporting her innocence and lay out the true facts of her guilt in order to qualify for the safety valve. Had she done so she would have added additional levels to the sentencing computation (e.g., two levels for obstruction of justice by committing perjury at the trial) and subjected herself to a prosecution on perjury charges on account of that same testimony. Counsel was clearly not ineffective for not exposing her to those risks by pursuing a gambit which in any event was sure to be unsuccessful.

With respect to the Batson issue, Defendant argued; "In this case, the prosecutor ended up agreeing that the juror he struck could be on the jury, but this Court had already let her go. It is Petitioner's position that had counsel made an objection early enough in the on-going proceeding, this Court would not have excused a perfectly qualified juror." (Def. Supp. Motion at 2). This is a meritless contention because the government made a national origin - neutral objection as accepted by this court and the Court of Appeals. The timing of defense counsel's Batson objection has no effect upon this determination. It is pointless to speculate that if counsel had objected before the challenged juror left the courtroom, the government's withdrawal of its challenge would have resulted in the seating of that juror and a different verdict.

The relevant facts are all matters of record, and they establish as a matter of law that there is no basis for Defendant's claim that at her trial and sentencing she was deprived of effective assistance of counsel. Consequently an evidentiary hearing is unnecessary.

### III. Conclusion

Defendant claims that she was deprived of effective assistance of counsel with respect to her post-arrest statements, the dismissal of a juror of Colombian origin, and failure to impose a sentence below the statutory minimum is without merit. An evidentiary hearing is unnecessary. Defendant's motion for § 2255 relief will be dismissed without issuance of a certificate of appealability.

    */s/ Dickinson R. Debevoise*
DICKINSON R. DEBEVOISE
U.S.S.D.J.

Dated: November 12, 2008